JS-6
O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SOUTHERN DIVISION

| | |
|---|---|
| **CHRISTOPHER HELLMICH,**<br><br>　　　　　Petitioner,<br><br>　　vs.<br><br>**MASTIFF CONTRACTING, LLC; JAMES W. MARTIN; GEORGE HOLLEY, JR.; and CHELSEY STEAD MARTIN**<br><br>　　　　　Respondents. | Case No.: SACV 14-1354 DOC(ANx)<br><br>**ORDER**<br><br>**GRANTING PETITION TO CONFIRM ARBITRAL AWARD, ALTERNATIVELY, TO AMEND THE AWARD AND COMPEL ARBITRATION [21]**<br><br>**GRANTING PETITION TO CONFIRM SECOND ARBITRAL AWARD [28]**<br><br>**DENYING APPLICATION FOR ENTRY OF DEFAULT AGAINST RESPONDENT CHELSEY STEAD MARTIN [40]** |

Before the Court are Petitioner Christopher Hellmich's Petition to Confirm Arbitral Award ("First Petition" or "First Pet.") (Dkt. 21), Petition to Confirm Second Arbitral Award ("Second Petition" or "Second Pet.") (Dkt. 28), and Application for Entry of Default Against Respondent Chelsey Stead Martin (Dkt. 40). After reviewing the papers and hearing oral arguments, the Court GRANTS the Petitions and DENIES the Application.

**I. Background**

Petitioner Christopher Hellmich ("Petitioner") seeks confirmation of an arbitral award dated September 28, 2014 against Respondents Mastiff Contracting, LLC ("Mastiff"), George Holley, Jr. ("Holley"), and James W. Martin ("Martin"). In the alternative, Petitioner asks the Court to amend the award and compel Mastiff, Holley, Martin, and Respondent Chelsey Anne

Stead Martin ("Stead Martin") to arbitrate. In addition, Petitioner seeks confirmation of an arbitral award dated October 23, 2014 against Mastiff, Holley, and Martin.

### A. Facts

Mastiff is a citizen of New York. Martin is the majority shareholder of Mastiff and is a citizen of New York. First Pet. at 3-4. Holley is the second largest shareholder of Mastiff and is a citizen of Texas. *Id.* at 4. Stead Martin, also a citizen of New York, is James Martin's wife and was allegedly held out by Mastiff as its Chief Financial Officer. *Id.* Petitioner was a shareholder of Mastiff at all relevant times to his claims and is a California citizen. *Id.* at 3.

Martin and Holley formed Mastiff in 2009 after creating a new enclosed deep well power generator and cooling systems technology that could generate electricity in a renewable and eco-friendly manner. Arbitration Demand ¶ 2 ("Arb. Demand") (Dkt. 21-3). Mastiff, through Martin and Holley, represented to investors, including Petitioner, that Mastiff solely owned all of the intellectual property associated with its technology and that it had filed provisional patents for it. *See, e.g.*, *id.* ¶¶ 32, 56.

Relying on Mastiff's representations, Petitioner made a $50,000 loan to Mastiff on September 27, 2013. First Pet., Ex. 2 ("Loan Agreement") (Dkt. 21-2). The Loan Agreement contained an arbitration provision which stated:

> Any and all disputes arising from or related to this Agreement or the relationship of the parties that cannot be resolved by negotiation shall be resolved by arbitration conducted in Orange County, California in accordance with the Commercial Arbitration Rules of the American Arbitration Association ("AAA"), which rules are incorporated by reference into this clause. There shall be a single arbitrator chosen in accordance with the rules of the AAA. The arbitration shall be conducted in a single hearing, and the arbitrator shall render his or her decision within thirty (30) days of the conclusion of the hearing. The expenses of the arbitration (including reasonable attorney's fees) shall be borne as specified in the decision of the arbitrator who shall allocate those costs and fees based on the relative merit of the two positions, as determined by the arbitrator. The arbitrator shall not have power to award damages in connection with any dispute in excess of actual compensatory damages and shall not multiply actual damages or award consequential or punitive damages. Equitable remedies shall be available in any such arbitration. The decision of the arbitrator shall be final and non-appealable. Judgment upon any decision rendered by the arbitrator may be entered by any court having jurisdiction.

Loan Agreement at 2. The Loan Agreement is between "the undersigned, Mastiff Contracting, LLC" and "Christopher Hellmich." Loan Agreement at 1. At the bottom of the last page of the contract, Martin signed "For Mastiff." The signature block reads, "James W. Martin CEO Mastiff Contracting, LLC." *Id.* at 2. Holley's and Stead Martin's names does not appear on the document.

Subsequently, again in reliance on Mastiff's misrepresentations, Petitioner made three more loans to Mastiff. Arb. Demand ¶¶ 36-41, 52-53. Those loans are now past due. *Id.* ¶ 5.

In its early days, Mastiff allegedly fell under the influence of a purported banker David Maxwell, who "claimed access to secret sources of money that could grow a few million into billions within 12-18 months." *Id.* ¶ 3. Mastiff began pitching business ventures involving schools, security fores, printing presses, deep sea diving, saw-mills, and construction, none of which had to do with its electricity generation technology. Because Mastiff's focus was so scattered and because Mastiff promised fantastical returns, no one was interested in investing. *Id.* ¶¶ 3, 27. In 2012-2014, Raymond Salem, Dr. Rick Cardin, and Petitioner became involved with Mastiff and worked to put Mastiff on the right track by developing a more realistic business plan and lining up likely investors. *Id.* ¶¶ 26-31, 35, 41, 62-71. However, Mastiff refused to take any investments that limited Mastiff's ability to use the funds to invest with Maxwell. *Id.* ¶¶ 72-77.

### B. Arbitration Proceedings

On July 9, 2014, Petitioner filed a demand for arbitration with AAA against Mastiff, Holley, and Martin. His demand alleges claims of (1) breach of contract; (2) declaratory relief; (3) violation of California's Unfair Competition Law (UCL); (4) fraud; and (5) accounting. All of the claims are solely against Mastiff except the fraud claim, which is alleged against all three. *See generally* Arb. Demand. The breach of contract claim is brought based in part on Mastiff's failure to repay its loans from Petitioner. *Id.* ¶¶ 82-85. The fraud claim is brought based on the allegations that Petitioner was induced to loan money to Mastiff by Mastiff's, Holley's, and Martin's misrepresentations that Mastiff solely owned all of the intellectual property and their

material omission of the fact that they never intended to agree to any investment that was not tied to a Maxwell transaction. *Id.* ¶¶ 108-113.

On August 4, 2014, the Arbitrator held a telephonic hearing regarding Petitioner's AAA Rule 38 Motion for Emergency Measures of Protection. *Id.* Petitioner attended the hearing with his counsel. Respondents Martin and Holley attended and spoke at the hearing. *See* Arbitration TRO Hr'g Tr., Aug. 4, 2014 ("TRO Hr'g Tr.") (Dkt. 1-2). Respondent Mastiff could not participate in the hearing because Mastiff, a limited liability corporation, was not represented by counsel at the hearing. *See id.* at 8:7-11:3 (noting that, under AAA rules and California law, a limited liability corporation must be represented by counsel).

As a result of the hearing, the Arbitrator issued the first arbitral award at issue in this case, First Pet., Ex. 1 ("First Arbitral Award"), a temporary restraining order pursuant to AAA Rule 38. The order, dated September 28, 2014, states in relevant part:

> 4. The Arbitrator issued a temporary restraining order that shall remain in full force and effect until the arbitrator determines rules on Claimant's motion for preliminary injunction. The arbitrator ordered that:
>
> > a. RESPONDENT MASTIFF CONTRACTING, LLC, its owners, officers, directors, employees, agents, and their assigns, shall immediately cease, and/or is restrained from commencing or participating in, any or all commercial, monetary, banking, or securities transactions of every nature or kind that directly or indirectly involve David Maxwell, as he is identified in the moving papers;
> >
> > b. RESPONDENT JAMES W. MARTIN, is restrained, enjoined, and barred from directly or indirectly exercising any managerial control of any type of Mastiff Contracting, LLC;
> >
> > c. RESPONDENT GEORGE HOLLEY, JR., is restrained, enjoined, and barred from directly or indirectly exercising any managerial control of any type of Mastiff Contracting, LLC;
>
> . . . .
>
> 5. As a further order of the Arbitrator, Respondent Martin is authorized to use Mastiff Contracting LLC's funds solely limited for the purpose of retaining counsel to represent Mastiff Contracting, LLC in the matters relating to this AAA arbitration Case No. 01-14-0000-8830. Additionally such funds may be used by

> Mastiff Contracting, LLC's counsel to investigate and/or file counterclaims against Claimant in this arbitration.

First Arbitral Award ¶¶ 4-5.

The second arbitral award at issue in this case resulted from telephonic hearings on September 17, October 20, and October 23, 2014. Second Pet. at 4; Second Pet., Ex. 1 ("Second Arbitral Award"), at 1. The Second Arbitral Award, dated October 23, 2014, granted Petitioner's motion for prejudgment writ of attachment and ordered the following:

> 15. Claimant is hereby authorized to attach, levy, and otherwise secure tangible and/or intangible property valued, collectively, at no more than $730,992.50.
>
> 16. Claimant is authorized to direct any levy officer within the jurisdiction of any court confirming this order, and consistent with this Right to Attach Order, to attach, seize and/or levy on any and all tangible or intangible assets belonging to Respondent Mastiff Contracting, LLC.
>
> . . . .
>
> 19. Claimant or his representative is authorized to immediately serve this Right to Attach Order on the proper authorities at the United States Patent and Trademark Office and/or the United States Copyright Office and attach any and all tangible or intangible property Respondent Mastiff Contracting, LLC and/or Respondent James W. Martin, including but not limited to all provisional or non-provisional patent applications, provisional or non-provisional patents, and/or copyrights.
>
> 20. Claimant or his representative is authorized to immediately serve this Right to Attach Order on any person or entity holding or possessing tangible or intangible property belonging in whole or in part to Respondent Mastiff Contracting, LLC.
>
> 21. Respondents Martin and Holley, Jr. are immediately ordered to cease all efforts to further dissipate, hide, conceal, or consume any and/or all tangible or intangible assets of Mastiff Contracting, LLC.

Second Arbitral Award ¶¶ 15-16, 19-21.

In the Second Arbitral Award, the Arbitrator also specifically opined on its jurisdiction over Respondents Holley and Martin:

> 17. This arbitral Tribunal has jurisdiction over the non-signatories Respondents James Martin and George Holley, Jr. The expansive provision in the parties['] arbitration agreement conveyed to me, the arbitrator, the power t[o] resolve all disputes related to the "relationship of the parties". The Supreme Court and the Ninth Circuit have interpreted this terminology to encompass all disputes without exception. Verified Complaint ¶ 18. In addition to employing this broad langue the parties' arbitration agreement also adopted the American Arbitration Association's Commercial Arbitration Rules ("AAA Rules"). I ruled previously that the current AAA Rules, those as of October 1, 2013, govern this proceeding. AAA Rule 7 conveys to me the same broad jurisdictional authority to determine the scope of my jurisdiction and the parties to the dispute. Finally, the parties' arbitration agreement also incorporates California law and Code of Civil Proc. §1297.161 conveys the same broad jurisdictional scope of authority. Any one of these sources is sufficient to empower me to rule as to the participation in this arbitration of non-signatories, but taken together there is little question but that the parties conveyed these broad jurisdictional powers to this arbitral Tribunal.
>
> 18. I hold that Individual Respondents James Martin and George Holley, Jr. are required to participate in this arbitration as parties and that they are subject to the orders of this arbitral Tribunal because, *inter alia*, they have participated in the arbitration and failed to object to this Tribunal exercising jurisdiction over them and in so doing they have waived that objection and, separately, they are Mastiff's alter egos (Verified Complaint ¶¶21-25).

Second Arbitral Award ¶¶ 17-18.

### C. Procedural History of This Case

On August 22, 2014, Petitioner filed a petition in this Court to confirm an earlier version of the First Arbitral Award. The Court dismissed Petitioner's petition for lack of service to Respondents Holley and Martin and because the earlier version was not properly signed by the Arbitrator. *See* Order Dismissing Petition (Dkt. 15).

On October 14, 2014, Petitioner filed a new petition seeking confirmation of a signed First Arbitral Award (Dkt. 21). Ten days later, Petitioner filed a petition seeking confirmation of the Second Arbitral Award (Dkt. 28). The Petitions were served on Mastiff's counsel of record via ECF and were served by the U.S. Marshals Service on Martin on November 6, 2014 and on Holley on November 12, 2014 (Dkts. 36-37). The Marshals were initially unable to locate Stead Martin because she was deployed on a 6-month military assignment to an undisclosed location

and her husband refused to accept service on her behalf (Dkt. 35). However, she was finally served on December 12, 2014 with both the First and Second Petitions (Dkt. 40-1).

During this period, because of difficulties in effecting service of process, the Court set briefing schedules twice. Ultimately, each of the Respondents filed an opposition to the Petitions (some styled as motions to dismiss) (Dkts. 30, 31, 39, 46, 49, 51).[1] Petitioner filed replies (Dkts. 32, 41, 54). During this time, Petitioner also filed an application for entry of default against Chelsey Stead Martin (Dkt. 40). Oral argument was held on the Petitions and the application for entry of default was held on January 26, 2015 (Dkt. 56).

## II. Legal Standard

### A. Confirming or Vacating an Arbitral Award

Under the Federal Arbitration Act,

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration . . . then at any time within one year after the award is made any party to the arbitration may apply to the court . . . for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of [the Arbitration Act].

9 U.S.C. § 9; *Lagstein v. Certain Underwriters at Lloyd's, London*, 607 F.3d 634, 640 (9th Cir. 2010). "A motion to confirm an arbitration award is intended to be a summary proceeding that merely makes the arbitrators' award a final, enforceable judgment of the court." *Hannibal Pictures v. Les Films de l'Elysee*, No. CV 12-6434 CAS JCGX, 2012 WL 6608595, at *2 (C.D. Cal. Dec. 18, 2012) (internal quotation marks omitted).

The party seeking to vacate an award bears the burden of establishing grounds to vacate. *U.S. Life Ins. v. Super. Nat. Ins. Co.*, 591 F.3d 1167, 1173 (9th Cir. 2010). One of the few grounds on which a court may vacate an award is "where the arbitrators exceeded their powers,

---

[1] Some oppositions were filed in accordance with the Court's deadlines; others were not. In light of the courts' and the public's interest in resolving cases on their merits and in light of the confusion created by service of process, the Court construes these filings as timely.

or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4).

### B. Compelling Parties to Arbitrate

The Federal Arbitration Act (FAA) provides that "any arbitration agreement within its scope shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. It permits any party "aggrieved by the alleged . . . refusal of another to arbitrate" to petition any federal district court for an order compelling arbitration in the manner provided for in the agreement. *Id.* § 4; *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

The court's role under the FAA is limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue. *See* 9 U.S.C. § 4; *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719-20 (9th Cir. 1999). The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd,* 470 U.S. 213, 218 (1985). The FAA reflects "a liberal federal policy favoring arbitration." *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2011). "As a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983).

### III. Discussion

Attempting to figure out which parties and issues in this case should be subject to arbitration and which ones not reminds the Court of the proverbial ant traveling along a Mobius strip. The individual Respondents contend that the Arbitral Awards cannot be confirmed and that they cannot be compelled to arbitrate because they were not parties to the Loan Agreement. Petitioner claims that the individual Respondents were constructively parties to the Loan Agreement because they are Mastiff's alter egos and agents. If the dispute stopped there, the Court would simply have to resolve whether the individual Respondents were alter egos or agents, a question of average complexity. Petitioner argues, though, that the alter ego issue should be before the Arbitrator because the broad language of the arbitration clause allows the

Arbitrator to determine the scope of his own jurisdiction. However, the scope of an arbitrator's jurisdiction is only arbitrable if the parties agreed to arbitrate it. *New England Mech., Inc. v. Laborers Local Union 294*, 909 F.2d 1339, 1344-45 (9th Cir. 1990) (holding that the arbitrator should decide his own jurisdiction only "if the parties 'clearly and unmistakably provide' that an arbitrator is to decide" it). This brings the Court back to the question of whether the individual Respondents are parties to the Loan Agreement. Because the Court only has jurisdiction to confirm an arbitral award or to compel arbitration when parties have agreed to arbitrate, the only way to exit the endless loop is for the Court to decide who are the actual and constructive parties to the Loan Agreement.

### A. Mastiff

It is clear from the face of the Loan Agreement that Mastiff was a party to the Loan Agreement. Mastiff does not dispute this fact. Rather, Mastiff argues that Plaintiff's claims other than the breach of contract claim are beyond the scope of the arbitration agreement. The Court finds this argument unpersuasive. The language of the Loan Agreement is broad. It covers "[a]ny and all disputes arising from or related to this Agreement or the relationship of the parties." Petitioner's breach of contract, declaratory relief, UCL, fraud, and accounting claims all arise from or are related to Petitioner's and Mastiff's relationship. Accordingly, Mastiff is bound to arbitrate those disputes and is subject to the Arbitrator's decisions.

Mastiff also argues that the First Arbitral Award should not be confirmed as to Mastiff because the First Arbitral Award relates to individuals who are not parties to the arbitration agreement. The Court rejects this argument, as Mastiff cites to no legal authority that an arbitral award cannot be confirmed as to a party to the arbitration agreement merely because the arbitral award also purportedly binds non-parties.

Mastiff also argues that it never agreed to arbitrate "corporate governance" issues. The First Arbitral Award enjoins Holley and Martin from exercising managerial control over Mastiff. This sounds in corporate governance; however, it is also consistent with a tribunal exercising its power to maintain the status quo pending litigation, such that a defendant's assets are not dispersed before judgment is rendered in a fraud claim.

Accordingly, the Court CONFIRMS the First and Second Arbitral Awards as to Mastiff.

## B. Individual Respondents

Whether the Loan Agreement binds Holley, Martin, and Stead Martin is fiercely contested. None of these individuals signed the Loan Agreement. However, "nonsignatories of arbitration agreements may be bound by the agreement under ordinary contract and agency principles." *Letizia v. Prudential Bache Sec., Inc.*, 802 F.2d 1185, 1187 (9th Cir. 1986). "Among these principles are '1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel.'" *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006) (citing *Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995)). Petitioner argues that the individual Respondents can be bound to the Loan Agreement either as agents or alter egos of Mastiff. Because the Court finds that they can be bound as agents, the Court addresses only the agent and not the alter ego theory.

"A nonsignatory to an agreement to arbitrate may be required to arbitrate . . . if a preexisting confidential relationship, such as an agency relationship between the nonsignatory and one of the parties to the arbitration agreement, makes it equitable to impose the duty to arbitrate upon the nonsignatory." *Westra v. Marcus & Millichap Real Estate Inv. Brokerage Co.*, 129 Cal. App. 4th 759, 765 (2005). It is beyond dispute that Martin was Mastiff's agent. Martin admits in his opposition that he is a shareholder of Mastiff and has controlled the actions of Mastiff. Mot. of James W. Martin to Dismiss Petitions ¶ 6 ("Martin Opp'n") (Dkt. 51). He signed the Loan Agreement as Mastiff's CEO. It is also beyond dispute that Holley and Stead Martin were Mastiff's agents. Holley states in his opposition that he "had some plans to be involved in Mastiff," but denies having been a shareholder of Mastiff or ever having controlled Mastiff's actions. Mot. of George Holley to Dismiss Petitions ¶ 6 ("Holley Opp'n") (Dkt. 46). Stead Martin also denies, in cursory fashion, that she ever controlled Mastiff's actions. Mot. of Chelsey Ann Martin to Dismiss Petitions ¶ 6 ("Stead Martin Opp'n") (Dkt. 49). These protestations, however, do not actually address whether Holley and Stead Martin are Mastiff's agents and are unpersuasive in light of Petitioner's evidence that they were. *See, e.g.*, First Pet., Ex. 5 (Dkt. 21-4) (a 2012 Mastiff business proposal listing Holley as COO and Stead Martin as

CFO); Affidavit of Dr. Frederick Cardin, Ex. 5 (Dkt. 41-4) (a 2013 memorandum of understanding signed by Holley as Mastiff's "DOO [sic]").

Because Mastiff could only act through its agents, the only equitable result is to the individual Respondents to the arbitration clause in the Loan Agreement. Petitioner alleges that Martin, Holley, and Mastiff (through Martin and Holley) made misleading statements and omissions that fraudulently induced Petitioner to enter the Loan Agreement and subsequent loan agreements with Mastiff. Arb. Demand ¶¶ 32-39. Petitioner also alleges that, shortly after he made his arbitration demand, Martin and Stead Martin drained Mastiff's assets to make Mastiff judgment-proof. Pet. at 14-15. In these circumstances, requiring Petitioner to bring his fraud claims against the individual Respondents in court would defeat Petitioner's contractual right to arbitrate its claims against Mastiff.

Accordingly, the Court holds that Martin, Holley, and Stead Martin are bound to the arbitration clause of the Loan Agreement and the Court CONFIRMS the First and Second Arbitral Awards as to Martin and Holley.

### C. Personal Jurisdiction

The individual Respondents claim that the Court lacks personal jurisdiction over them. To confirm an arbitral award, a petitioner must establish that a non-resident respondent has consented to personal jurisdiction in the forum or that the respondent otherwise has sufficient contacts with the forum such that exercising jurisdiction over him or her "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945); *Kirby Morgan Dive Sys., Inc. v. Hydrospace, Ltd.*, 478 F. App'x 382, 383 (9th Cir. 2012) (vacating district court's confirmation of an arbitral award because the district court did not have personal jurisdiction under the traditional minimum contacts framework or through respondent's consent); *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001) ("It is the plaintiff's burden to establish the court's personal jurisdiction over a defendant.").

Petitioner argues that personal jurisdiction exists over the individual Respondents because they are alter egos of Mastiff, such that Mastiff's consent to personal jurisdiction and

Mastiff's minimum contacts with this District can be imputed to the individual Respondents. To establish personal jurisdiction under an alter ego theory, plaintiff must prove "(1) that there is such unity of interest and ownership that the separate personalities [of the two entities] no longer exist and (2) that failure to disregard [their separate identities] would result in fraud or injustice." *Unocal*, 248 F.3d at 926.

> As a general rule, a parent-subsidiary relationship is not enough to attribute the contacts of the subsidiary to the parent for jurisdictional purposes. *Unocal*, 248 F.3d at 925. However, "a subsidiary's contacts may be imputed to the parent where the subsidiary is the parent's alter ego, or where the subsidiary acts as the general agent of the parent." *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.,* 328 F.3d 1122, 1134 (9th Cir. 2003). Thus, where a corporation is the alter ego of an individual defendant, the Court may "pierce the corporate veil" jurisdictionally and attribute contacts accordingly.

*Kayne v. Ho*, No. CV 09-6816 CAS CWX, 2010 WL 4794824, at *9 (C.D. Cal. Nov. 15, 2010). Plaintiff "bears the burden of proving by preponderance of the evidence facts which substantiate the exercise of jurisdiction by the district court." *Haisten v. Grass Valley Med. Reimbursement Fund, Ltd.*, 784 F.2d 1392, 1396 (9th Cir. 1986).

      Here, Petitioner has made detailed allegations in his verified arbitration demand and has provided some documentary evidence that Holley, Martin, and Stead Martin have treated Mastiff's funds as their own, comingled Mastiff's funds with their personal funds, secretly diverted Mastiff's funds, failed to maintain an arm's length relationship between themselves and Mastiff, and failed to maintain corporate records. *See* First Pet. at 11, 14-15. The individual Respondents have not objected to Petitioner's evidence, nor have they responded with their own evidence except by making conclusory assertions that they are not Mastiff's alter egos. Martin Opp'n ¶¶ 6, 8; Holley Opp'n ¶¶ 6, 8; Stead Martin Opp'n ¶¶ 6, 8. Based on this record, the Court is satisfied that Petitioner has met his burden of proving that the individual Respondents and Mastiff have such a unity of interest that treating them as separate entities for personal jurisdiction purposes in this case would be unjust. Accordingly, the Court has personal jurisdiction over the individual Respondents.

**IV. Disposition**

For the reasons discussed above, the Court GRANTS Petitioner's petitions to confirm the First and Second Arbitral Awards and to compel Respondents to arbitrate.

Because Stead Martin has appeared in this case and has responded substantively to the Petitions, the Court DENIES Petitioner's Application for Entry of Default against Stead Martin.

DATED: January 27, 2015

_____
DAVID O. CARTER
UNITED STATES DISTRICT JUDGE